STEAGALL, Justice.
Don Williams sued Avery Yarbrough and Avery Yarbrough & Associates for damages for breach of an oral contract and for conversion of materials Williams had produced for a real estate investors’ course to be promoted by Yarbrough. A jury awarded Williams $47,000 in compensatory damages and the trial court denied Yarbrough’s motion for new trial. The court added interest to the amount of the jury’s award and entered a judgment for $54,520.00. In essence, Yarbrough questions on appeal the sufficiency of the evidence to sustain the jury’s verdict. Specifically, Yarbrough denies the existence of a contract and, in the alternative, argues that he and Williams had, if anything, a satisfaction contract for goods, which goods Yarbrough accepted but later rightfully revoked his acceptance in good faith.
Williams began a real estate school in the 1960’s that offered a preparation course for the Alabama real estate license examination. The course consisted of lectures that Williams gave personally and a corresponding textbook. Williams sold the school to Yarbrough in 1979 under a written contract; thereafter, Williams updated the text for the course pursuant to various oral agreements between them as laws pertaining to real estate and taxes changed. Sometime in 1983, Williams and Yarbrough discussed beginning a real estate investors’ course together. According to testimony by both of them, after negotiating for several months, they finally reached an oral agreement providing that Williams would produce written materials and eight video lectures for the investors’ course and would update the prelicense course, for which Yarbrough was to pay $50,000. Yar-brough would own the materials and have the right to market the course, while Williams retained the option to present the course in Florida. Both men also agreed that if for some reason Yarbrough was dissatisfied with the materials prior to using them, Williams would buy them back. It is this “satisfaction” condition that Yar-brough now argues justified his retention, advertising, and marketing of Williams’s material without payment for it.
Williams completed the videotapes and the corresponding book by the end of 1983 and delivered them to Yarbrough. On January 2, 1984, Yarbrough wrote Williams a check for $47,000, but postdated it for March 1, 1984, for tax purposes. (Yar-brough had previously paid Williams $3,000 for the updating of the prelicense course.) Yarbrough stopped payment on the check on February 8, 1984, retaining the materials Williams had produced, and when Williams presented the check at Colonial Bank on March 1, 1984, it refused to pay. Williams sued Yarbrough and Yarbrough & Associates on April 24, 1984.
There was testimony and other evidence at trial indicating that Yarbrough advertised and marketed the course in the winter and spring of 1983-84, selling almost all of the 250 copies of Williams’s book he had had printed. Yarbrough kept all of the tapes and the book until the trial in October 1986. Testimony was conflicting as to the basis for Yarbrough’s dissatisfaction with the tapes and the book and as to the extent to which he communicated that displeasure to Williams. Yarbrough claimed that the tapes were not long enough to meet state requirements; however, Williams stated that Yarbrough told him three hours was too long for one session and that he asked Williams to shorten the tapes, and that Williams did. While Williams and Yarbrough agreed that the content of the master tapes was satisfactory, they agreed that the quality of some of the copies of the tapes was not satisfactory and Williams remade those copies.
*567 i
There was ample testimony from both men that they reached an agreement, or had a meeting of the minds, concerning the real estate investors’ course and the responsibilities of each party under that agreement. Their dispute concerns Yar-brough’s right to make a profit from the course without paying Williams the agreed upon price. While a satisfaction contract obligates a promisor to perform only upon performance by the other party to the promisor’s satisfaction, the promisor must exercise good faith in his determination of whether he is satisfied, and this is a question for the jury. Health Maintenance Group of Birmingham v. Rutledge, 459 So.2d 889 (Ala.Civ.App.1984).
II
Conversion occurs upon a wrongful taking, an interference, or a detention of the property of another. National Security Corp. v. Applied Systems, Inc., 418 So.2d 847 (Ala.1982); Davis v. Huntsville Production Credit Association, 481 So.2d 1103 (Ala.1985). In this case, Yarbrough’s appropriation and marketing of the course, as well as his detention of it until the date of trial, certainly justified a finding by the jury that Yarbrough converted it.[1] The trial court’s denial of Yarbrough’s motion for new trial is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.

. This Court recognizes that the Uniform Commercial Code would apply in this case; however, neither party argued it in the pleadings or at trial. The agreement involved the sale of specially manufactured goods worth over $5,000, Ala.Code 1975, § 7-2-201(1) and (3)(a), which Yarbrough accepted, § 7-2-606. There was sufficient trial testimony that Yarbrough neither rightfully rejected the goods, § 7-2-602, nor revoked his acceptance of them, § 7-2-608.